**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| NICHOLAS KROLL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2019-0969-KSJM |
| | ) | |
| CITY OF WILMINGTON, | ) | |
| WILMINGTON POLICE | ) | |
| DEPARTMENT, and MICHAEL | ) | |
| PURZYCKI, Mayor of the City of | ) | |
| Wilmington, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION TO DISMISS**

1. This action involves a collective bargaining agreement between a police union and the City of Wilmington ("Wilmington" or the "City"). The Wilmington Police Department terminated the plaintiff for an alleged violation of the City's residency requirement. The plaintiff filed this action seeking a declaration that the defendants are in breach of the collective bargaining agreement. The defendants moved to dismiss the amended complaint, and this Order grants the motion.

2. The facts are taken from the Amended Verified Complaint (the "Amended Complaint") and documents that it incorporates by reference.[1]

3. The Wilmington Police Department hired Plaintiff Nicholas Kroll as a police officer on March 18, 2013. Kroll was required to establish and maintain a residence in

---

[1] C.A. No. 2019-0969-KSJM, Docket ("Dkt.") 7 ("Am. Compl.").

Wilmington for a period of at least sixty months (the "Residency Requirement") as a condition of his employment.

4. In July 2013, Kroll purchased a home in Wilmington, Delaware. In November 2014, Kroll purchased a second home in Middletown, Delaware. Kroll's wife and children live at the second home. The purpose of the second home was to be in the Appoquinimink School District, which offered specialized educational programs for Kroll's child with special needs.

5. In April 2017, administrators in the City's Human Resources department discovered inconsistencies between Kroll's 2015 and 2017 affidavits. The inconsistencies related to a newly identified apartment number on the 2017 affidavit.

6. Until October 2017, the definition of "residence" in The Wilmington Police Officer's Manual and on the yearly residency affidavit forms was:

> A person's residence is that dwelling or abode, where one actually lives. It refers to one's home, the place which is the center of the person's non-working hours. This will ordinarily be the place where one normally eats, sleeps, and keeps his or her personal or household effects.[2]

7. On October 12, 2017, the City modified the definition of "residence" as follows:

> For Purposes of the City's residency requirement, an employee's residence is his/her domicile, i.e., that place where the employee has his/her true, fixed, and permanent home. It is also the dwelling where [the] employee actually lives. It is the place where the employee eats, sleeps, and keeps his/her personal belongings. It is the place that is the center of the employee's non-working hours. In the absence of a martial

---

[2] *Id.* ¶ 25.

separation, it is the dwelling at which an employee's spouse and children, if any, reside.[3]

8. In November 2017, the Wilmington Police Department notified Kroll that purportedly fraudulent and dishonest information contained in his residency affidavits violated the department's rules and regulations. A disciplinary hearing panel was convened to consider the issue. On January 11, 2018, the panel heard evidence related to Kroll's residency affidavits. At that hearing, Charlotte Barnes, the City's Director of Human Resources, testified that the residency requirement applicable to Kroll was the City's modified 2018 definition. The panel found that Kroll did not satisfy the requirements of "residence" under the 2018 definition of the term. Kroll was then terminated as a police officer for the Wilmington Police Department.

9. The modified definition of "residence" was adopted when the 2018 residency affidavits were circulated in early 2018. By the time the new residency affidavits were circulated, Kroll was no longer employed by the Wilmington Police Department.

10. On April 11, 2018, an internal appeal hearing was conducted to review the panel's decision. The appeal board affirmed the decision.

11. A collective bargaining agreement (the "Agreement") between the City and the Fraternal Order of Police Lodge No. 1 (the "FOP") governed the terms of Kroll's employment. In February 2019, the City and the FOP engaged in arbitration over whether the modified definition of "residence" violated the Agreement. On March 4, 2019, an arbitrator returned a decision finding that the City's unilateral modification of the definition

---

[3] *Id.* ¶ 26.

violated the Agreement (the "Arbitration Award").[4] The arbitrator directed the City to continue using the pre-2018 definition of residence until the FOP agreed to change it or the Delaware General Assembly amended the definition.[5]

12. Kroll filed this action on December 4, 2019, and the Amended Complaint on January 27, 2020. The Amended Complaint seeks: a declaration that the City, the Wilmington Police Department, and Mayor Michael Purzycki (collectively, "Defendants") violated the Agreement; a declaration that Defendants violated Kroll's due process rights when the panel applied the modified 2018 definition of "residence" at Kroll's hearing; an injunction preventing Defendants from taking action based on the 2018 modified definition of residence; an order reinstating Kroll to his position as a police officer with the Wilmington Police Department, including awarding backpay and related compensation; and, in the event that the court does not reinstate Kroll, monetary damages for past and future loss related to Kroll's termination.

13. Defendants moved to dismiss the Amended Complaint on February 20, 2020.[6] The parties fully briefed Defendants' motion on June 12, 2020.[7]

14. On December 8, 2020, the court stayed the case pending the resolution of a prior-filed action concerning the Arbitration Award, "[g]iven the overlapping nature of the

---

[4] *See* Dkt. 18 Ex. A ("Arbitration Award") at 18–23.

[5] *Id.* at 23.

[6] Dkt. 10.

[7] *See* Dkt. 15; Dkt. 18; Dkt. 19.

issues raised by these two actions."[8]  The prior-filed action was *The City of Wilmington v. Wilmington Fraternal Order of Police Lodge No. 1, Inc.*[9]  On January 22, 2020, the court granted the FOP's motion for summary judgment in the prior-filed action.[10]  The hope was that resolving the prior-filed action concerning the residency requirement would lead to settlement discussions in this action.  Apparently, that hope was unfounded.

15.     Defendants pressed their motion to dismiss, and the court heard oral argument on that motion on May 18, 2021.[11]

16.     Defendants have moved to dismiss the Amended Complaint for lack of subject matter jurisdiction under Court of Chancery Rule 12(b)(1).[12]  Plaintiff bears the burden of establishing the court's subject matter jurisdiction.[13]  A contractually specified arbitration procedure deprives this court of jurisdiction by providing an adequate remedy

---

[8] Dkt. 21 at 2.

[9] *See* C.A. No. 2019-0506-KSJM.

[10] *See City of Wilmington v. Wilm. Fraternal Order of Police Lodge No. 1, Inc.*, 2020 WL 8257386, at *14 (Del. Ch. Jan. 22, 2020).

[11] Dkt. 24.

[12] Defendants also moved to dismiss under Court of Chancery Rule 12(b)(6), but they did not brief that issue.  Regardless, it is rendered moot by the Rule 12(b)(2) motion.

[13] *See, e.g.*, *Hall v. Coupe*, 2016 WL 3094406, at *2 (Del. Ch. May 25, 2016); *Morgan v. Carpenter*, 2014 WL 7192476, at *3 (Del. Ch. Dec. 18, 2014); *Pitts v. City of Wilmington*, 2009 WL 1204492, at *5 (Del. Ch. Apr. 27, 2009).

at law.[14] "[A] Rule 12(b)(1) motion will be granted if the parties contracted to arbitrate the claims asserted in the complaint."[15]

17.    Pursuant to the Police Officers and Firefighters' Employment Relations Act (the "Act"): "The public employer and the exclusive bargaining representatives shall negotiate written grievance procedures by means of which bargaining unit employees, through their collective bargaining representatives, may appeal the interpretation or application of any term or terms of an existing collective bargaining agreement; such grievance procedures shall be included in any agreement entered into between the public employer and the exclusive bargaining representative."[16]

18.    The Agreement "requires that all conditions of employment, including those not expressly addressed in the Agreement, be maintained at the highest standards."[17] The Agreement "provides a process by which the FOP or employees may file grievances," and "[i]f that process is followed and the grievance is not satisfactorily resolved, the Agreement

---

[14] *See, e.g.*, *Chemours Co. v. DowDuPont Inc.*, 2020 WL 1527783, at *8 (Del. Ch. Mar. 30, 2020); *ASDC Hldgs., LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Tr.*, 2011 WL 4552508, at *6 (Del. Ch. Sept. 14, 2011); *Red Clay Educ. Ass'n v. Bd. of Educ.*, 1992 WL 14965, at *9 (Del. Ch. Jan. 16, 1992) (citing *NLRB v. C & C Plywood Corp.*, 385 U.S. 421 (1967)).

[15] *360 Campaign Consulting, LLC v. Diversity Comm'n, LLC*, 2020 WL 1320909, at *2 (Del. Ch. Mar. 20, 2020) (quoting *Li v. Standard Fiber, LLC*, 2013 WL 1286202, at *4 (Del. Ch. Mar. 28, 2013)).

[16] 19 *Del. C.* § 1613(c).

[17] *Fraternal Order of Police*, 2020 WL 8257386, at *2.

permits the FOP to appeal to an impartial arbitrator."[18]   Only then may the FOP or an employee seek judicial relief by moving to vacate the arbitration award.[19]

19.     Plaintiff's claims fall within the grievance procedure.  Kroll purchased a home in Wilmington, Delaware and a second home in Middletown, Delaware.  The Wilmington Police Department believed that information contained in Kroll's residency affidavits were the product of fraud and dishonesty, thereby violating the department's rules and regulations.  The issue underpinning Kroll's termination was the requirements of "residence" under the 2018 definition of the term.  Because the residency requirement and accompanying residency affidavits fall within the umbrella phrase "all conditions of employment," Kroll's claims are encompassed by the grievance procedures and therefore subject to arbitration.

20.     Kroll did not follow the grievance process that was provided in the Agreement.  He pleads no facts that indicate his disciplinary hearing and appeal were conducted through his collective bargaining representatives.  Even if he had, Kroll also pleads no facts that he appealed to an independent arbitrator, as required by the Agreement. Here, a "complete remedy otherwise exists" in the form of the grievance process outlined in the Agreement.[20]

---

[18] *Id.* at *4.

[19] *See id.* at *4, *11–12.

[20] *See Christiana Town Ctr., LLC v. New Castle Ctr.*, 2003 WL 21314499, at *3 (Del. Ch. June 6, 2003).

21. Defendants' motion to dismiss is GRANTED for lack of subject matter jurisdiction.

/s/ Kathaleen St. J. McCormick
Chancellor Kathaleen St. J. McCormick
Dated: August 16, 2021